[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14939

_____

D.C. Docket No. 1:11-cv-00010-WLS

CORNELIUS B. FAISON,

Plaintiff-Appellee,

versus

DONALSONVILLE HOSPITAL INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 26, 2015)

Before HULL and BLACK, Circuit Judges, and ANTOON,* District Judge.

PER CURIAM:

_____

*Honorable John Antoon II, United States District Judge for the Middle District of
Florida, sitting by designation.

In this case, Cornelius Faison sued appellant Donalsonville Hospital, Inc. ("the Hospital"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., to recover insurance benefits that the Hospital had denied as excluded from coverage.  This Court previously affirmed the district court's entry of judgment in favor of plaintiff Faison.  See Faison v. Donalsonville Hosp., Inc., 534 F. App'x 924, 925-26 (11th Cir. 2013) (unpublished) ("Faison I").  We now consider only the Hospital's appeal from the district court's denial of its Federal Rule of Civil Procedure 60(b) motion for relief from judgment.  After careful review of the record and the briefs, and with the benefit of oral argument, we affirm the district court's denial of the Hospital's Rule 60(b) motion.

## I.  FACTUAL BACKGROUND

The defendant Hospital is the named fiduciary and administrator of an Employee Benefit Plan, which includes health insurance coverage ("the Plan"). The Plan is governed by ERISA.  At all relevant times, plaintiff Faison was a plan participant of the Plan.

### A.    The Plan Language

The Plan states that "Medical Benefits apply when Covered Charges are incurred by a Covered Person for care of an Injury or Sickness and while the person is covered for these benefits under the Plan."  Once the out-of-pocket limit

2

is reached, "Covered Charges incurred by a Covered Person will be payable at 100% (except for the charges excluded)." "Covered Charges are the Usual and Reasonable Charges that are incurred for," inter alia, "Hospital Care" and "Other Medical Services and Supplies." The Plan provides that "[a] charge is incurred on the date that the service or supply is performed or furnished."

Paragon Benefits, Inc. ("Paragon") is a third-party administrator of the Plan. In this role, Paragon is responsible for receiving claims from covered individuals and making an initial claim determination. If a plan participant appeals Paragon's initial benefits decision, the Hospital, as fiduciary of the Plan, reviews the determination without giving any deference to Paragon's decision. The Hospital's Benefits Committee makes the final determination on appeals.

## B.    Plaintiff Faison's Accident

On July 26, 2009, Faison was driving a motorcycle on a Georgia highway without a valid license or registration. A Georgia State Patrol Officer attempted to initiate a stop of Faison for speeding at 84 miles per hour in a 65-mile-per-hour zone. Instead of pulling over, Faison increased his speed in an attempt to elude the officer, increasing his speed to at least 120 miles per hour. Faison then lost control of the motorcycle on a curve and traveled off the highway for 185 feet before striking several trees and coming to a rest.

3

Faison sustained severe injuries.  He was airlifted to Tallahassee Memorial Hospital ("Tallahassee Memorial").  As a result of his injuries, Faison remained hospitalized at Tallahassee Memorial until September 11, 2009, and amassed $481,783.48 in medical bills from Tallahassee Memorial and other medical creditors.  The majority of Faison's debt, $420,631.55, was with Tallahassee Memorial.

In connection with the accident, Faison was charged with several misdemeanors; however, none of the individual charges could result in a sentence to a term of imprisonment in excess of one year.  Faison pled guilty to each charge and was sentenced to 12 months' probation on each charge, to run consecutively.

## C.    Plaintiff Faison's Plan Claim

Between October 2009 and June 2010, in a series of Explanation of Benefits statements sent to Faison, Paragon denied benefits on the basis that the medical care related to his July 26, 2009 accident was not covered under the terms of the Plan.  On August 10, 2010, Faison appealed the denial to the Hospital and requested that Paragon provide additional information concerning the grounds for its denial.  On September 14, 2010, Paragon sent a letter explaining that it had denied coverage based on the Plan's "Illegal Acts" exclusion.

The "Plan Exclusions" section provides that, "[f]or all Medical Benefits shown in the Schedule of Benefits, a charge for the following is not covered":

(19) **Illegal acts.**  Charges for services received as a result of Injury or Sickness occurring directly or indirectly, as a result of a Serious Illegal Act, or a riot or public disturbance.  For purposes of this exclusion, the term "Serious Illegal Act" shall mean any act or series of acts that, if prosecuted as a criminal offense, <u>a sentence to a term of imprisonment in excess of one year could be imposed.</u>  It is not necessary that criminal charges be filed, or, if filed, that a conviction result, or that a sentence of imprisonment for a term in excess of one year be imposed for this exclusion to apply.

(Emphasis added).

In an October 21, 2010 letter, the Hospital informed Faison that the Committee affirmed the denial of his claim based on the "Illegal Acts" exclusion.

## II.  PROCEDURAL HISTORY

### A.    <u>Faison I</u> Proceedings

On January 11, 2011, Faison sued the Hospital under ERISA, alleging that the Hospital had improperly denied him benefits.  The parties consented to have the district court hear their case as a trial on the papers pursuant to Federal Rule of Civil Procedure 52.  On September 17, 2012, the district court issued an opinion granting Faison's motion for entry of judgment.  The district court entered final judgment in favor of Faison in the amount of $481,783.48.

The Hospital appealed.  On August 22, 2013, this Court summarily affirmed. See <u>Faison I</u>, 534 F. App'x at 925-26.[1]

### B.    **Rule 60(b) Proceedings**

_____

[1]Shortly thereafter, the district court granted Faison's unopposed motion for attorney's fees in the amount of $56,370.

5

On September 16, 2013, the Hospital filed the instant Rule 60(b) motion for relief from judgment. The Hospital argued that it was entitled to relief under Rule 60(b)(2) because newly discovered evidence showed that, in June 2010, Tallahassee Memorial "wrote off" Faison's entire medical bill, $420,631.55, to charity.[2] The Hospital requested the district court (1) to modify the judgment to reduce the damages to reflect the amount Tallahassee Memorial had written off and to reduce the award of attorney's fees by a corresponding amount; and (2) reopen discovery for the limited purpose of seeking third-party discovery from Tallahassee Memorial concerning the "write off."

The Hospital attached to its Rule 60(b) motion a January 24, 2013 billing statement from Tallahassee Memorial for the care and services rendered to Faison between July 27, 2009 and August 11, 2009. The billing statement reflected total charges of $420,631.55. The billing statement also contained a credit for the full amount of the bill, $420,631.55, entered on "6/16" and coded as "CHARITY OUT OF STATE."

Faison responded in opposition to the Hospital's Rule 60(b) motion, asserting that the Hospital had not submitted any admissible evidence in support of the motion. In any event, the unauthenticated billing statement produced by the Hospital did not show that Faison's bill was "written off." To the contrary,

---

[2]The Hospital also requested relief based on Rule 60(b)(3) and (b)(5), but it does not renew those arguments on appeal.

6

although Faison had participated in Tallahassee Memorial's financial assistance program and received a charitable credit for the charges he incurred, Faison pointed out that under the terms of that program, the charitable credit will become null and void if Faison recovers payment for the charges from the Hospital.

Faison attached an October 15, 2013 declaration from Tallahassee Memorial's Director of Patient Access and Financial Services, Jeff Sherman. Sherman stated that Tallahassee Memorial maintains a financial assistance program for uninsured or under-insured patients. After the Hospital denied Faison benefits, Faison applied to participate in the financial assistance program and Tallahassee Memorial deemed him eligible. Accordingly, Tallahassee Memorial gave Faison a charitable credit for the expenses incurred during his hospitalization.

Under the terms of the program agreed to by Faison, however, "the charitable credit . . . Faison received becomes null and void if . . . Faison becomes entitled to payment from another person (such as an insurer or an employee benefit plan) of the expenses for which he received a charitable credit." (Emphasis added). In such case, "Tallahassee Memorial HealthCare would become entitled to reimbursement of the expenses for which . . . Faison was given a charitable credit." The declaration noted that "Faison agreed to these terms when he applied to participate in Tallahassee Memorial HealthCare's financial assistance program."

7

The Hospital filed a reply, contending that the declaration presented by Faison failed to prove that he was under any <u>legal obligation</u> to reimburse Tallahassee Memorial for the charitable credit under the terms of the financial assistance program. The Hospital also suggested that Sherman's declaration misrepresented the terms of the program, and attached to its reply an unsigned, undated application to Tallahassee Memorial's financial assistance program.[3] The application stated:

> In the event that your injuries or illness, which necessitated the services rendered by Tallahassee Memorial Hospital, <u>arose from the acts or omission of a third party and you are entitled to compensation from that third party or their insurer</u>, then the charity entitlement is null and void. Tallahassee Memorial Hospital as the holder of the assignment of benefits is entitled to be reimbursed for services rendered directly from any settlement of judgment proceeds.

(Emphasis added). Thus, the Hospital argued, the terms of the financial assistance program did not render the charitable credit null and void unless Faison was entitled to a compensation from <u>a third party that caused his injuries</u>. In this case, Faison himself, and not the Hospital or any other third party, had caused his injuries.

---

[3]The Hospital essentially conceded that it had no evidence as to whether the proffered application was identical to the one signed by Faison, stating that it had "recently obtained a Tallahassee Memorial document that appears to be an unsigned version of the document described in [Faison's] Response and accompanying declaration. . . . If this 'Application for Assistance with Hospital Expenses' reflects the reimbursement 'terms' alleged by [Faison], then [Faison's] assertion that Tallahassee Memorial will somehow become entitled to payment is demonstrably false."

8

Following permission from the district court, Faison filed a sur-reply. Faison stated that the district court should not consider the financial assistance program application submitted by the Hospital because, in an ERISA case, a district court does not take evidence and instead evaluates the reasonableness of the Plan administrator's decision in light of the record before the administrator. Alternatively, the district court should not consider the financial assistance program application because it was unauthenticated.

On December 30, 2013, the district court held a hearing on the Hospital's Rule 60(b) motion, at which the parties presented arguments on their respective positions.

## C.    District Court's Order Denying Rule 60(b) Motion

On September 30, 2014, the district court denied the Hospital's Rule 60(b) motion.  As an initial matter, the court found that, under Rule 60(b)(2), the motion was timely, the Hospital exercised due diligence, and the evidence presented was not cumulative or impeaching.  However, because the evidence was "immaterial and would not have produced a different result," the Hospital was not entitled to relief from the judgment.  The district court found, inter alia, that Faison still "may be liable to Tallahassee Memorial Hospital for his expenses initially covered by a charitable credit should they be paid by an insurance provider," citing to

9

Sherman's declaration and the Tallahassee Memorial financial program application.

## III.  STANDARD OF REVIEW

We review the district court's denial of a Rule 60(b)(2) motion for abuse of discretion.  Willard v. Fairfield S. Co., 472 F.3d 817, 821 (11th Cir. 2006).  The appellant's burden on appeal from the denial of a Rule 60(b) motion is heavy. Cano v. Baker, 435 F.3d 1337, 1342 (11th Cir. 2006).  It is not enough that a grant of the Rule 60(b) motion might have been permissible or warranted; instead, the appellant must show a justification so compelling the district judge was required to vacate the prior order.  Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1132 (11th Cir. 1986).

## IV.  DISCUSSION

Rule 60(b)(2) provides that a party may obtain relief from a final judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial."  Fed. R. Civ. P. 60(b)(2). This Court employs a five-part test that a movant must meet in order to be entitled to relief under Rule 60(b)(2):

> (1) the evidence must be newly discovered since the trial [or final judgment or order]; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial [or

10

reconsideration of the final judgment or order] would probably produce a new result.

Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1274 (11th Cir. 2014).

As an initial matter, we note plaintiff Faison's contention on appeal that the district court properly denied Rule 60(b) relief because, even in the context of a Rule 60(b)(2) motion based on newly discovered evidence, the district court in an ERISA case is permitted to consider only the information that was before the Plan administrator when it denied benefits. Cf. Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008) (holding that, for both "arbitrary and capricious" and de novo review, the district court is limited to consideration of the facts and record before the administrator at the time its decision was made). We do not decide the extent to which district courts may grant relief based on newly discovered evidence under Rule 60(b) in ERISA cases because we agree with the district court here that, in any event, the Hospital's evidence did not entitle it to relief.

Put simply, the Hospital did not show that Faison was not still liable to Tallahassee Memorial for his full medical bill of $420,631.55. After the Hospital submitted a Tallahassee Memorial billing statement showing that Faison had received a charitable credit, Faison countered with a declaration in which Jeff Sherman, a Tallahassee Memorial director, explained that the charitable credit

11

would become null and void if Faison became entitled to payment from "an employee benefit plan."  The Hospital then submitted a single-page application form for Tallahassee Memorial's financial assistance program stating that the charitable credit would become null and void if the applicant were entitled to compensation from a third party that was responsible for the applicant's injury.

However, the Hospital proffered no evidence of when that version of the application was in effect, whether that version of the application contained identical terms as the application signed by Faison, or whether the form constituted the entire application for the program or contained an exclusive list of the program's terms.  Sherman's declaration did state that Faison agreed to the relevant terms "when he applied to participate in Tallahassee Memorial HealthCare's financial assistance program."  (Emphasis added).  But the application form submitted by the Hospital noted that it was required "[t]o begin the process" of receiving assistance with hospital expenses and that additional documentation and forms would or may be required.  Thus, the Hospital did not show that the application was the same and only one signed by Faison or that it contained all of the program terms to which he agreed when applying for the program.

Further, in the Rule 60(b) hearing before the district court on December 30, 2013, counsel for Faison represented to the district court that: (1) "there's not a

12

windfall"; (2) "Mr. Faison is not going to wind up with any money in his pocket in this, these creditors are going to be paid. So there's not going to be a windfall at all"; (3) "[I]f Mr. Faison was taking this money and sticking it in his pocket and doesn't have to pay them, well, we might be talking about something different. But, that's not the case"; and (4) "[W]e have no intention of anybody getting a windfall, nobody's going to get a windfall. And we're going to apply this money as it's supposed to be applied."[4]

On appeal, the Hospital argues that Faison failed to provide evidence of the terms to which he agreed as part of receiving the charitable credit. However, even assuming that Faison had not proffered Sherman's declaration, it is the Hospital, as the Rule 60(b) movant, that bears the burden of presenting material evidence that would probably produce a new result if the final judgment were reconsidered. See Application of Consorcio Ecuatoriano, 747 F.3d at 1274. And, on appeal from the denial of its Rule 60(b) motion, it is the Hospital that must demonstrate that the district court was required to vacate its prior order. See Solaroll Shade, 803 F.2d at 1132. Especially in light of Sherman's declaration—which specifically stated that the terms to which Faison had agreed made him liable to Tallahassee Memorial if he recovered benefits from an employee benefit plan—the Hospital has not carried

---

[4]At oral argument, the same counsel represented that the money paid into the district court already would be used to pay attorney's fees and then the creditors and would not be a windfall to Faison. Counsel said he will negotiate with the creditors to resolve the debts.

13

its burden of showing that Faison is no longer obligated to pay his Tallahassee Memorial bill.[5]

In sum, we cannot say that the district court was required to vacate its prior order, and thus, we affirm the district court's denial of the Hospital's Rule 60(b) motion.[6]

**AFFIRMED.**

---

[5]In its reply brief, the Hospital requests that this Court remand to the district court for further factual development on the issue of the charitable credit, but the Hospital waived this argument by failing to raise it in its initial brief. See In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

[6]We decline to consider the Hospital's additional argument that Faison's claim is "moot," as all of his creditors' claims are time-barred under the applicable statute of limitations, because the Hospital did not raise this argument in the district court. See Depree v. Thomas, 946 F.2d 784, 793 (11th Cir. 1991) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").